**KOLLER LAW LLC**
David M. Koller, Esq. (037082002)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **DOMINIQUE BROWN,** | : | |
| **51 Gallo Court** | : | |
| **Lawrence Township, NJ 08648** | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **GRAYBAR ELECTRIC COMPANY, INC.** | : | |
| **d/b/a GRAYBAR ELECTRIC SUPPLY,** | : | |
| **3 Nami Lane, Suite 4** | : | |
| **Hamilton, NJ 08619** | : | |
| | : | |
| **34 North Meramec Avenue** | : | |
| **Clayton, MO 63105** | : | |
| **Defendant.** | : | |

**AMENDED COMPLAINT**

Plaintiff, Dominque Brown (hereinafter "Plaintiff"), by and through her attorney, Koller

Law, LLC, bring this civil matter against Graybar Electric Company, Inc. d/b/a Graybar Electronic

Supply (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990,

as amended ("ADA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the

New Jersey Law Against Discrimination ("NJLAD").   In support thereof, Plaintiff avers as

follows:

**THE PARTIES**

1. Plaintiff is an adult individual residing at the above captioned address.

2. Upon information and belief, Defendant is an electrical component distribution company

with a location at 3 Nami Lane, Suite 4, Hamilton, NJ 08619 and with a corporate headquarters located at 34 North Meramec Avenue, Clayton, MO 63105.

3. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

5. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

6. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

7. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original

jurisdiction that they form part of the same case or controversy.

8. Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because the Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff exhausted her administrative remedies under the ADEA, the ADA, Title VII and the NJLAD.

10. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability, race and gender discrimination and retaliation against Defendant.

11. The Complaint was assigned a Charge Number 530-2020-03666 and was dual filed with the Pennsylvania Human Relations Commission.

12. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated August 31, 2020. Plaintiff received the Notice by mail.

13. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

14. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter.

15. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

16. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

17. Plaintiff is African American homosexual female.

18. On December 21, 2019, Defendant hired Plaintiff in the position of Lead Supervisor.

19. Plaintiff was well qualified for her position and performed well.

20. During Plaintiff's employment with Defendant, Plaintiff was the only African American female in a leadership position.

21. She was also the only homosexual female in a leadership position.

22. On January 2, 2020, Plaintiff suffered a stroke.

23. Plaintiff was admitted to Penn Medicine – Princeton Medical Center in Plainsboro, New Jersey from January 2, 2020 to January 3, 2020.

24. Upon Plaintiff's discharge, she was instructed to remain out of work until January 13, 2020.

25. On January 3, 2020, Plaintiff sent Bob Grayson (Caucasian), General Manager and Plaintiff's direct supervisor, a copy of the medical note from her doctor instructing her to remain out of work until January 13, 2020 via text message.

26. In addition, Plaintiff's mother went to Defendant and informed Mr. Grayson about Plaintiff's medical condition and her requested accommodation to remain out of work until January 13, 2020.

27. During Plaintiff's medical leave, Plaintiff remained in contact with Mr. Grayson.

28. Plaintiff's physician scheduled a follow-up appointment on January 13, 2020.

29. On Sunday, January 12, 2020, Plaintiff sent Mr. Grayson a text message informing him of her follow-up appointment and sent him a cop of the letter from her doctor's office regarding her medical appointment.

30. Plaintiff returned to work on Tuesday, January 14, 2020.

31. Plaintiff's only restriction was that she could not be under excessive stress.

32. Upon Plaintiff's return, Jose LNU (Hispanic) , Material Handler, and Javier LNU (Hispanic), Lead Supervisor, began to harass her.

33. They would question why Plaintiff had been on a leave for two (2) weeks; state that she should not still have her position; and tell her that she should not work at Defendant.

34. Javier also falsely implied that Plaintiff was clocking in late when she had not and began to nitpick Plaintiff's work product.

35. In addition, although Plaintiff was Jose's supervisor, he challenged her direction, questioned what I was working on, and called Plaintiff "trash."

36. On January 23, 2020, a group of male employees were fooling around instead of doing an exercise.

37. Afterwards, Jose confronted me about why I had not participated in the exercise.

38. Plaintiff responded that she was doing a training.

39. Jose became confrontational and yelled at Plaintiff.

40. Later that same day, Plaintiff attended the first part of a two-part training session with Mike LNU, Trainer.

41. The first part of the training session was instructional and the second part, which occurred on the morning of January 24, 2020, was a hands-on application of what had been taught on January 23, 2020.

42. During the first-part of the training, Plaintiff listened attentively.

43. During the second-part of the training, Plaintiff was an active participant in the hands-on training.

44. On the morning of January 24, 2020, Plaintiff spoke to Mr. Grayson in his office about Jose and Javier harassing her.

5

45. Plaintiff also told Mr. Grayson that they were making disparaging comments about her taking a medical leave of absence.

46. Mr. Grayson did not take notes, he did not ask Plaintiff to submit a written statement, and he did not indicate that he would investigate Plaintiff's complaint.

47. Instead, Mr. Grayson stated that he would have a team meeting later that day with all the employees.

48. Later that same day, at approximately 9:00 am, Mr. Grayson held a team meeting with about 20 employees in the training room.

49. Mr. Grayson stated that everyone should treat each other with respect.

50. Upon information and belief, no investigation was conducted, and Javier and Jose were not disciplined or counseled regarding their conduct.

51. At 11:15 am on January 24, 2020, less than four (4) hours after Plaintiff complained of harassment, she was informed that Mr. Grayson wanted to see her in the office.

52. Plaintiff met with Mr. Grayson in his office where he proceeded to terminate Plaintiff's employment.

53. Mr. Grayson informed Plaintiff that he had contacted Defendant's Human Resource Department to inform them of Plaintiff's harassment complaint and that Human Resources had told Mr. Grayson that Plaintiff was having too many problems already and that she should be let go.

54. Mr. Grayson then told Plaintiff that Mike LNU, the Trainer, had reported that Plaintiff did not seem engaged during the instructional part of the training, and Mike had asked if Plaintiff was sick or if something was wrong with her.

55. Plaintiff stated that Mike's comments were offensive, especially since Mr. Grayson knew that she had recently suffered a stroke.

56. Mike's comment, moreover, was incorrect as she was an active and engaged participant in the hands-on portion of the training that had occurred earlier that same day.

57. Plaintiff was then escorted out of the building.

58. Prior to Plaintiff's termination, Plaintiff had not received any discipline, write-ups or counseling from Defendant.

59. At 1:58 pm on January 24, 2020, Plaintiff contacted Jennifer Ingram, Director of Human Resources, to inform her that she had been terminated.

60. Ms. Ingram expressed shock at Plaintiff's termination, and she stated that someone would contact Plaintiff to discuss it.

61. A couple of days later, Plaintiff received a telephone call from a Human Resource Coordinator.

62. During the telephone call, the Human Resource Coordinator defended the conduct of Mike and others, but told Plaintiff that she would talk to them and call her back.

63. However, Plaintiff received no further communication from anyone at Defendant.

64. Plaintiff also was not provided anything in writing regarding her termination.

**COUNT I – DISABILITY DISCRIMINATION**
**<u>AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED</u>**

65. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

66. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by

Plaintiff and its agents as being disabled.

67. Plaintiff was qualified to perform the job.

68. Plaintiff was subject to an adverse employment action, including, but not limited to, termination.

69. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

70. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

71. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

72. The purported reason for Defendant's decision is pretextual.

73. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

74. As a result of Defendant's unlawful disability discrimination, Plaintiff suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT II – DISABILITY DISCRIMINATION
## NEW JERSEY LAW AGAINST DISCRIMINATION

75. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

76. Plaintiff is a "qualified individual with a disability" as that term is defined under the NJLAD because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Plaintiff and its agents as being disabled.

77. Plaintiff was qualified to perform the job.

78. Plaintiff was subject to an adverse employment action, including, but not limited to, termination.

79. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

80. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

81. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

82. The purported reason for Defendant's decision is pretextual.

83. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

84. As a result of Defendant's unlawful disability discrimination, Plaintiff suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT III – RACE DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

85. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

86. Plaintiff is a member of protected classes in that she is African American.

87. Plaintiff was qualified to perform the job for which she was hired.

88. Plaintiff suffered adverse job actions, including, but not limited to termination.

89. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

90. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

91. Defendant discriminated against Plaintiff on the basis of race.

92. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

93. The reasons cited by Defendant for the above adverse employment actions that Plaintiff suffered are pretext for discrimination.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – RACE DISCRIMINATION
## NEW JERSEY LAW AGAINST DISCRIMINATION

94. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

95. Plaintiff is a member of protected classes in that she is African American.

96. Plaintiff was qualified to perform the job for which she was hired.

97. Plaintiff suffered adverse job actions, including, but not limited to termination.

98. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

99. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

100. Defendant discriminated against Plaintiff on the basis of race.

101. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

102. The reasons cited by Defendant for the above adverse employment actions that Plaintiff suffered are pretext for discrimination.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT V – RETALIATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

103. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

104. Plaintiff engaged in protected activity protected by the ADA when she requested a reasonable accommodation due to her disability and when she complained to her supervisor about the discriminatory conduct based upon her disability.

105. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

106. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT VI – RETALIATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

107. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

108. Plaintiff engaged in protected activity protected by Title VII when she complained to her supervisor about the discriminatory conduct based upon her race, gender and sexual orientation.

109. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

110. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

11

## COUNT VII – RETALIATION
## <u>PENNSYLVANIA HUMAN RELATIONS ACT</u>

111. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

112. Plaintiff engaged in activity protected by the PHRA when she requested a reasonable accommodation due to her disability and when she complained to her supervisor about the discriminatory conduct based upon her disability, race, gender and sexual orientation.

113. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

114. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, Dominque Brown, requests that the Court grant her the following relief against Defendant:

(a)    Compensatory damages;

(b)    Punitive damages;

(c)    Liquidated damages;

(d)    Emotional pain and suffering;

(e)    Reasonable attorneys' fees;

(f)    Recoverable costs;

(g)    Pre and post judgment interest;

(h)    An allowance to compensate for negative tax consequences;

(i)    A permanent injunction enjoining Defendant, its directors, officers, employees,

agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, Title VII and the NJLAD.

(j)      Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)      Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)      Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: December 2, 2020        **By:**    */s/ David M. Koller*
                                        David M. Koller, Esquire (037082002)
                                        2043 Locust Street, Suite 1B
                                        Philadelphia, PA 19103
                                        215-545-8917
                                        davidk@kollerlawfirm.com

                                        *Counsel for Plaintiff*

13